BOSTON ELEVATED RAILWAY COMPANY *vs.* MARYLAND CASUALTY COMPANY.

Suffolk.   December 30, 1918. — February 27, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Insurance,* Against liability, Notice.   *Waiver.*   *Words,* "Immediate."

In an action by an elevated railway corporation against an insurance company on a policy insuring the plaintiff against loss imposed by law upon the insured for bodily injuries accidentally suffered by any person not employed by it, it appeared that the plaintiff had paid a judgment for such injuries, that the policy contained a provision requiring "immediate written notice of any accident and of any suit resulting therefrom" to be given to the defendant, that the plaintiff did not give to the defendant such a notice of the accident for which the judgment was recovered until nine months after it occurred and that for some months before such written notice the plaintiff knew through the reports of its agents that the injured person would seek to bring her case within the terms of the policy.   *Held,* that there was no evidence that the plaintiff gave to the defendant the "immediate" notice required by the policy.

In the case above described the plaintiff contended that the defendant had waived the requirement of immediate notice of the accident.   There was evidence that the manager of the Boston office of the defendant, through which the policy was issued, was asked by an attorney at law, who, not being the general attorney of the plaintiff, had been employed by the plaintiff to defend the action brought against it by the injured person, why he did not come in and defend the action, and replied that the insurance company was not liable for the accident as it did not happen in a way to bring it under the policy, and that after the trial the same manager said to the same attorney that the defendant had $5,000 with which to fight the case against it and that it was worth $5,000 "to know if they were liable in a case such as that was," and said that he had suggested to the plaintiff before the trial that the plaintiff should settle this case as cheaply as it could and then try out with the defendant the question of the defendant's liability, and further stated a ground on which he considered that the accident was not one covered by the policy.   Subject to the defendant's exception, the attorney to whom these remarks were made was allowed to testify to them and also to testify that the defendant's Boston manager during the whole conversation never mentioned that the notice was too late or that there was any defect in regard to it.   *Held,* that, assuming that the defendant's manager of its Boston office had authority to waive the condition of the policy requiring immediate notice, which this court did not decide, there was nothing in the evidence from which it fairly could be inferred that he intended to waive any of the terms of the policy and that there was no evidence of waiver of the condition to go to the jury.

In the case above described it was *pointed out* that, at the time of the conversation between the attorney then acting for the plaintiff and the defendant's

Boston manager, the plaintiff already had forfeited its right to recover under the policy by its failure to give immediate notice to the defendant of the accident to its passenger, so that such failure was in no way induced by reliance on anything said by the defendant's Boston manager.

CONTRACT upon a policy of liability insurance, whereby the defendant agreed to indemnify the plaintiff against loss from the liability imposed by law upon the insured for damages on account of bodily injuries, including death resulting therefrom, accidentally suffered by any person or persons not employed by the insured while at or about the work of the insured and during the prosecution of the said work at the place or places mentioned in a schedule attached to the policy, "provided such bodily injuries or death are suffered as a result of accidents occurring within the period of twelve months beginning" October 4, 1911, and ending October 4, 1912. The substituted declaration alleged, "that one Georgia Reed, not an employee of the Boston Elevated Railway Company, accidentally suffered bodily injury and made a claim and later brought a suit against this plaintiff. Due notice of said claim and suit were given to this defendant, but this defendant neglected, refused and failed to investigate and defend said suit as required by the terms of its policy. At the trial of the case of Georgia Reed vs. Boston Elevated Railway Company said Georgia Reed claimed that she was injured by the negligence of a workman or workmen in the employ of the Boston Elevated Railway Company at the Sullivan Square terminal on or about February 8, 1912; and this plaintiff further says that said workman or workmen were electricians or wiremen employed by the Boston Elevated Railway Company who were engaged in the erection, repairs and extension of the Elevated Division of the Boston Elevated Railway Company. The Jury which heard the case of Georgia Reed vs. Boston Elevated Railway Company found as a fact that the accident to Georgia Reed happened in the manner which she described at her trial and thereupon returned a verdict for the plaintiff, and subsequently owing to the neglect, refusal and failure on the part of the defendant to investigate and defend said suit as required by the terms of its policy, this plaintiff was compelled to pay on execution the sum of $4,591.60 and also the further sum of $291.09 for investigation and defence of said suit." Writ dated March 4, 1913.

In the Superior Court the case was tried before *Keating,* J.   The evidence is described in the opinion.   The provision of the policy sued upon in regard to notice of an accident alleged to be covered by the policy was as follows: "Immediate written notice of any accident and of any suit resulting therefrom, with every summons or other process, must be forwarded to the Home Office of the Company, or of its authorized representative."

At the request of the plaintiff the judge gave to the jury the following instructions:

"1. The defendant in writing the policy of insurance upon which this action was based, did so in view of the character, the nature and the extent of the street railway business, in which business the plaintiff was engaged."

"3. The plaintiff was bound to exercise only ordinary diligence and care in adopting such measures as would lead to knowledge on the part of those entrusted with the duty of giving notice to the insurance company of the occurrence of the accident and of claims for damages resulting therefrom, by proper instructions to the employes, and such other means as may be reasonable."

"8. The officials of the Boston Elevated Railway Company or the servants of the Elevated Railway Company charged with the duty of giving notice, under the policy, were not chargeable with the knowledge that the accident to Georgia Reed was an accident within the policy, simply because other servants of the Boston Elevated Railway Company may have had such knowledge."

The defendant asked the judge to make the following ruling:

"13. That there is no evidence that the defendant waived the condition requiring notice."

The judge refused to make this ruling.

The defendant made a motion that a verdict be ordered for the defendant.   The judge denied the motion.

It was agreed that the damages were $6,013.85.   The defendant offered no evidence.   At the close of the evidence at a conference between the judge and the counsel, the judge stated that as he understood the case there were only three questions in issue:

"1. Whether or not the notice sent by the plaintiff to the defendant on November 12, 1912, was 'immediate' within the meaning of the policy.

"2. Whether or not the defendant company waived the provision of the policy requiring immediate notice.

"3. Was the accident to Miss Reed one which came within the provisions of the policy?"

To this statement both counsel assented.

The judge submitted to the jury three special questions, as follows:

"1. Did the accident which Georgia Reed met with come within the policy?

"2. Did the Boston Elevated Railway Company forward an immediate written notice of the accident and of the suit resulting therefrom to the Maryland Casualty Company?

"3. Did the Maryland Casualty Company waive the requirement of the policy as to the time when notice of the accident and of the suit resulting therefrom should be forwarded by the plaintiff to the defendant?"

The jury answered all three questions affirmatively and returned a verdict for the plaintiff in the sum agreed upon. The defendant alleged exceptions.

The case was submitted on briefs.

*E. I. Taylor,* for the defendant.

*A. E. Pinanski & G. E. Morris,* for the plaintiff.

CARROLL, J. The defendant insured the plaintiff against loss from liability imposed by law upon the plaintiff "for damages on account of bodily injuries" suffered by any person "not employed by the Assured, while at or about the work of the Assured and during the prosecution of the said work." One Georgia Reed was injured on February 8, 1912, and recovered a verdict against the plaintiff. In this action the plaintiff seeks to recover the amount of an execution it was compelled to pay her, together with the amount expended by the plaintiff in the preparation and defence of the action. It was conceded that there was evidence from which the jury might infer "that the operation out of which the injuries to Georgia Reed," hereinafter called the passenger, resulted, "was an operation covered by the terms of the policy." The material questions raised by this bill of exceptions are:

First. Was there any evidence for the jury that the plaintiff gave to the defendant immediate written notice of the accident, according to the terms of the policy?

Second.  Was there any evidence for the jury that the defendant company waived the provisions of the policy requiring immediate notice of the accident?

The policy provided that immediate written notice of any accident must be forwarded to the home office of the company or its authorized representative.  Written notice of the accident was not given to the defendant by the plaintiff until November 12, 1912, the plaintiff's contention being that, while its employees were at work where the passenger was injured and at once reported the occurrence to the plaintiff, the facts reported did not bring the passenger's case within the terms of the policy and it did not know until November 8, 1912, that she claimed her injuries resulted from the negligence of the plaintiff's workmen who were making repairs at the Sullivan Square terminal where she was injured.

Assuming that the plaintiff acted with due diligence in investigating the claim of the passenger and that at the time of the accident it had no means of knowing that she was injured by the negligence of its employees, or that she would make this claim, and acting on the reports received, the plaintiff was justified in supposing she was injured by falling against a permanent part of the elevated structure and the accident was not within the terms of the policy.  There was evidence, however, from one of its investigators that he knew the passenger claimed to have been injured by the negligence of the plaintiff's workmen several months before the written notice was given.  This investigator called on the passenger either in February or March, 1912, and the claim was then made by her that it "was a piece of carelessness on the company's part to have two men working on pipes and leave them in such a condition that people would fall over them," and she informed the investigator at this interview that she fell over these pipes.  His report came to the attention of the claims attorney.  When this report was made, although contrary to the facts previously reported by the plaintiff's witnesses, the plaintiff knew that the passenger was claiming to have been injured in such a way as to impose liability upon the insurance company, under the terms of the policy.

The contract between the parties was clear and explicit.  It required immediate written notice of any accident and the giving of this notice was a condition precedent to recovery.  When the

investigator made his report the plaintiff knew that the passenger was claiming she was injured by the negligence of the plaintiff's workmen and it was then its duty at once to give the written notice, in order to protect its rights against the defendant. *Hatch* v. *United States Casualty Co.* 197 Mass. 101, 103. *National Construction Co.* v. *Travelers' Ins. Co.* 176 Mass. 121, 122. *McCarthy* v. *Rendle,* 230 Mass. 35, 39.

In addition to this the passenger alleged in her declaration, which was filed in court in April, 1912, that, while proceeding through the Sullivan Square terminal she "tripped and fell over a large box which had become detached from the wall and was lying in the middle of the floor." The plaintiff also knew from the report of one of its workmen who was present when the passenger was injured, that he was at the time moving a wooden box on the platform, which had been taken from an iron column. In its interrogatories to the passenger, filed in September, 1912, it asked for information as to how far from the wall the detached box was lying, and in her answer to these interrogatories, which answer was filed in October, she described the size, shape and material of the box and stated it was about two feet away from the wall and struck her below the knees. In her substitute declaration filed in October, she alleged that by the negligence of the defendant's servants or agents "she was caused to fall by being struck by a large box which had become detached from the wall." This declaration came to the attention of the attorney for the plaintiff, between October 7 and November 1.

Without reviewing all the evidence in detail, it shows very clearly that for months before the written notice was given the defendant insurance company, the plaintiff knew that the passenger's claim would bring her case within the terms of the policy. The plaintiff failed to comply with its terms. It practically gave up its right to hold the defendant, and the notice of November 12, 1912, was not an immediate notice as required by the contract of the parties.

The plaintiff contends that the insurer waived the condition of the policy requiring immediate notice. To support this contention it relies on the evidence of Frederick M. Ives, the attorney who represented the defendant in the case of Reed v. Boston Elevated Railway.

He testified to a conversation with M. O. Garner, the manager of the Boston branch of the defendant's company, at some time between November 23, 1912, and January 10, 1913, while the case was on the short list. Garner was asked why he did not come in and defend, and replied the insurance company was not liable for the accident and it did not happen in a way to bring it under the policy; to which the witness replied that the policy required the insurance company to defend these suits, even if groundless. The witness also testified that he again met Garner on February 4, 1913, after the trial of the Reed case, when Garner said "that the company had $5,000 with which to fight the case against the Maryland Casualty Company and it was worth $5,000 to know if they were liable in a case such as that was." Garner was asked what the defence was, and he said "he had suggested to the elevated railway before the trial of the case of Miss Reed, that the elevated railway settle the Reed case as cheaply as they could and then try out with the Maryland Casualty Company the question of their liability," to which Mr. Ives replied the proposition was absurd. Garner further stated that inasmuch as the witness for the Boston elevated stated that Miss Reed "tripped over this box, this coping, while it was in the position where it was meant to be," that the insurance company was not liable. Subject to the defendant's exception, the witness was allowed to testify that during the whole conversation Garner never mentioned that the notice was improper or that there was any defect in it.

There can be no waiver of a right unless the right is known and it was intended to surrender it. *National Construction Co.* v. *Travelers' Ins. Co. supra.* *Rooney* v. *Maryland Casualty Co.* 184 Mass. 26. Even if Garner, as general manager of its Boston office, had authority, which we do not decide, to waive the condition of the policy requiring immediate notice, it is not shown that he agreed or consented to such waiver. There is some evidence that a representative of Garner's office talked with the plaintiff's chief investigator after the notice of November 12 was sent to the defendant. Even if this evidence were sufficient to show when Garner talked with Mr. Ives he knew that no notice had been sent to the home office and that the plaintiff was ignorant of the passenger's contention until a day or so before the notice of November 12 was sent, there is nothing in the evidence from which it

fairly can be inferred that he intended to waive the terms of the policy. Mr. Ives was employed by the Boston Elevated Railway Company to defend the case brought against it by the passenger. He was not the general attorney of the company and is not shown to represent the plaintiff in matters relating to its insurance with the defendant. The conversation did not take place under such circumstances as to disclose an intention to waive the defendant's rights and Garner's remarks were not made for the purpose of surrendering any right the defendant had to successfully contest the claim of the plaintiff. What was said at the time was not said for the purpose of influencing the conduct of the plaintiff and it could not influence its conduct. It had already forfeited its right to rely on the policy by its failure to comply with the condition precedent. As was said in *McCord* v. *Masonic Casualty Co.* 201 Mass. 473, 476, "this is not a case where the plaintiff has been induced to forego doing something which he might have done had he not been lulled into a false belief that nothing more was necessary. It is not like the case of a defect of form in a notice where the time for giving notice has not expired." In neither of the conversations is there any evidence to show that Garner intended to waive the terms of the policy and relinquish the defendant's right to rely on its provisions.

*Exceptions sustained.*