## Metropolitan Life Insurance Company v. Davis.

(Decided March 25, 1927.)

### Appeal from Union Circuit Court.

Insurance.—If statements, in application for policy sued on, that insured was in good health, were false, statement at time of delivering policy by insurer's agent, authorized only to deliver it and collect premium, that insured's illness at that time would make no difference, was no waiver of insurer's right to rely on such defense, and court erred in admitting evidence thereof and instructing jury not to find insured's statement in application untrue, if agent knew or could have known by exercising ordinary care, that insured was then suffering from stomach ulcer.

TRUMAN DRURY for appellant.

HENSON & TAYLOR and P. H. WINSTON for appellee.

Opinion of the Court by Judge Sampson—Reversing.

A policy of life insurance issued upon the life of Robert Sigler for $2,000.00, Mrs. Blanche Sigler, now Blanche Davis, being beneficiary, is the subject of this litigation, commenced in the Union circuit court and resulting in a verdict and judgment in favor of Mrs. Blanche Davis for the amount of the policy. ·

In addition to the traverse of certain material averments of the petition, the defendant company pleaded affirmatively that the policy of insurance was void "*ab initio* and never constituted a valid or binding contract of insurance upon the life of said Robert Sigler, for the reason that this defendant was induced and procured to issue said contract by fraud, connivance, covin and procurement of said Robert Sigler; that defendant was deceived by said fraud and caused to issue what on its face purported to be a contract of insurance." The answer further averred that Robert Sigler made the application "knowing himself to be in bad health and to be so annoyed thereby that within the fortnight next preceding his application he had been compelled by his physical condition and resulting suffering, to summon two different physicians to attend him. At the time Robert Sigler made the false representations and fraudulent concealments aforesaid he was, and well knew that he was, sick and suffering from said stomach trouble, and knew if the true state of his health was disclosed to the defendant that the defendant would not have issued its policy of insurance on his life."

It is also averred in the answer that the defendant company, in further effort to bring out and disclose the physical history and true condition of the health of Robert Sigler, asked him the name of the physician who last attended him and the date of such attendance and the complaint for which he attended him, and the applicant answered, "Dr. Humphrey in 1918 for lagrippe." The pleading then averred that the answer given by the applicant "was a fraudulent evasion and a willful failure to disclose the truth, for he had consulted Dr. Humphrey, less than a week before that, to-wit, on November 9, 1920." The answer also charged at the time of the making of the application for insurance the insured Sigler was suffering from ulcers of the stomach and that he died of that trouble only about two months after the issual of the

policy; and, further, that at the time of the delivery of the policy of insurance the insured and his wife, acting for him, misled and deceived the agent of the company concerning the condition of the health of the insured, and did not reveal to the agent of the company delivering the policy the fact the insured was then sick in a hospital in Evansville, Indiana.  These averments of fraud, deceit and concealment on the part of the applicant and insured were fully traversed by reply.  The reply further pleaded that at the time of the delivery of the policy of insurance by the agent of the company to the wife of insured the insured was then in a hospital at Evansville, Indiana, and this fact was made known to the agent of the insurance company at the time and before the delivery of the policy, and the agent was asked by the wife of insured whether his being in a hospital at the time would affect the validity of the policy, and was assured by the agent of the company that it would not invalidate the policy if she would accept the same for her husband and pay the balance of the first premium then due, $70.20; and relying upon this assurance by the agent of the company the wife of assured accepted the policy and then by check paid the agent of the insurance company the balance of the first premium due upon the policy, and this check was later cashed by the agent of the company and remitted to the company.  The policy contains the following clause:

"All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid this policy or be used in defense of a claim hereunder, unless it is contained in the written application therefor and a copy of such application is securely attached to this policy when issued."

A photographic copy of the written application made by the insured to the insurance company for a policy on the 15th of November, 1923, is filed with and made a part of the policy.  It contains the following provision, relied on by appellant company as a defense herein:

"It is agreed that inasmuch as only the officers at the home office of the company in the city of New York have authority to determine whether or not a policy shall issue upon this application, and as they act on the written statements, answers and agree-

ments herein made, no statements, promises or information made or given by or to the person soliciting or taking this application for a policy, or by or to any other person, shall be binding on the company or in any manner affect its rights, unless such statements, promises or information be reduced to writing and presented to the officers of the company at the home office.''

The evidence is voluminous, but it proves in substance the following facts: Previous to November 15, 1920, one Richey, agent for the insurance company, had solicited the insured to take a policy in the Metropolitan, and on the date of the application the agent went to the home of the insured, in the presence of the wife of assured and others, again solicited the insured to take out a policy of insurance in appellant company, whereupon the insured, after some discussion, agreed to take a policy of $2,000.00 on his life provided his wife, appellee, Blanche Sigler, now Davis, would take a policy in the same company for $1,000.00. She consented to do this and the agent of the company immediately left the house and went out to find Dr. Winn, a physician, who regularly made examinations of applicants for insurance with the Metropolitan in that community. When the agent returned with the doctor the application was written up in the presence of several persons and signed by the applicant, Robert Sigler. In answer to questions applicant stated he had not been under the care of a physician since in 1918, and then for lagrippe, and further, that he was at that time in good health. These are some of the answers of which appellant now complains as being false.

For the company it is shown that Dr. Humphrey and perhaps another physician of the town of Sturgis were called in by insured some days before the 15th when the application for insurance was written, but this is denied by appellee, Davis, and several other witnesses who stated positively that the insured, Sigler, was in good health and made no complaint of stomach trouble or other disease at any time before the application was made for insurance, and not until four (4) days thereafter when, after eating a large meal, consisting principally of sausage, he suddenly became ill and was attended by one or more physicians about the 19th of the month. Neighbors of Sigler testified that they were in and about the

Sigler home frequently and saw the insured there and elsewhere and that he was not sick or complaining until after the application for the insurance was made; that he had been constantly employed by a coal company and was a regular worker; that they had known him for a number of years and had never known of his being sick. The physician who gave the principal evidence for the company upon the subject of attending the insured before the application for insurance was made, did not keep a written record of his visits and had to rely upon his memory entirely as to when he was called to and did attend insured.

On this phase of the case the court gave the jury instructions 1, 2 and 3, which were proper.

There was evidence on the trial that insured was sick in the hospital at the time of the delivery of the policy and the collection of the premiums, and that this fact was concealed by appellee, Davis, the then wife of the insured, from the agent of the company, and for this reason the policy was rendered invalid. Upon this question there is a great conflict in the evidence. 'For the company the agent testified that he did not know that the insured was sick or out of town and that he looked for insured on the streets of Sturgis, but not finding him he approached his wife, now appellee, at a store in that town and inquired for the insured; that appellee informed him that insured was out of town, but did not tell him he was sick or was then confined in a hospital; that thereupon he offered to deliver the policy to the wife of the insured, provided she would pay the balance of the first premium, which she consented to do, and not knowing of the serious illness of the insured or the cause of his being absent from town, delivered the policy to the wife and collected the premium; that he would not have delivered the policy had he known of the illness of the insured. On the other hand, appellee, Davis, testified that she told the agent when he approached her with the policy that her husband, the insured, was then sick or confined in a hospital in Evansville, Indiana, and inquired of him whether that would make any difference, and was told by the agent that it would not, and that he would deliver the policy to her provided she would pay the balance of the first premium, and that she consented to do so, and did then and there give the agent a check for the balance due, and the agent

accepted the check at the time knowing that the insured was sick in a hospital.

On this evidence the court gave the jury this instruction:

4. "Although you may believe from the evidence that said assured's statements, numbered 2 and 3, were substantially untrue, yet,

"If you shall believe from the evidence that the defendant's agent, H. E. Richey, at or before the time he delivered said policy to the assured's wife for him and collected from her the remainder of the premium therefor, knew that said assured, Robert Sigler, was then sick, and if you further believe from the evidence that said agent then knew or by the exercise of ordinary care could have known that said assured was then suffering from gastric ulcer, or ulcer of the stomach, if he was so suffering, then you will not find said assured's statement in said application to be untrue.

"2. I have never had any of the following complaints or diseases: Apoplexy, appendicitis, asthma, bronchitis, cancer or other tumor, consumption, diabetes, disease of brain, disease of heart, disease of kidneys, disease of liver, disease of lungs, disease of urinary organs, dropsy, fistula, fits or convulsions, general debility, habitual cough, hemorrhage, insanity, intestinal or hepatic colic.

This instruction was erroneous and should not have been given. The policy was issued upon the faith of the statements made in the application. The insured obtained the issue of the policy by these statements. But for the statements in the application the policy would not have been issued or been in the hands of Richey to deliver. Richey was only an agent of the company to deliver the policy and collect the premium. He was not an agent of the company with power to pass on the question whether the policy should be issued. There is no provision in the policy requiring the insured to be in good health at the time of the delivery of the policy. If the statements in the application were false the conduct of Richey at the time of the delivery of the policy was no waiver of the right of the company to rely on this defense. 32 C. J. p. 1335, Sec. 602; Com. Life Ins. Co. v. VanHoose, 208 Ky. 741; Ward v. Metropolitan, &c., Co., 50 Am. St. R. p. 80, and notes.

All the evidence as to what took place when the policy was delivered should have been excluded from the jury. The other instructions cover the whole law of the case.

Judgment reversed and cause remanded for a new trial.