# Federal Surety Company v. Guerrant.

(Decided March 27, 1931.)

BENTON & DAVIS for appellant.

JOUETT & METCALF, D. L. PENDLETON, and V. W. BUSH for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The Federal Surety Company seeks the reversal of a judgment for $2,903.23 recovered against it by Dr. E. P. Guerrant.

On December 26, 1925, the Federal Surety Company issued to Dr. Guerrant a policy of liability insurance, covering the operation of a Hudson Super Six coach for the period of one year.

On August 19, 1926, this machine, while driven in Laurel county, by Dr. Guerrant's 20 year old son, collided with a car driven by one Lyman Carter, and the latter was killed. In July, 1927, Dr. Guerrant and his son were sued for $50,500 by the administratrix of Carter. The Federal Surety Company was notified of the suit, but denied liability and declined to have anything to do with it. Dr. Guerrant defended the suit, was successful, and after it was over, filed this suit on the policy, alleging elaborately the foregoing, and further:

That on the day following the accident he gave notice thereof to John H. Lacy, the defendant's authorized agent, and gave defendant through Lacy the fullest information then obtainable.

That under and by the terms and conditions of said policy and contract the defendant company agreed with the plaintiff to indemnify him.

"On account of . . . injury or death to . . . persons injured or killed, and to the extent of

$1000.00 for property damage caused from accident or accidents by assured's automobile, a Hudson Super Six Coach, Factory Number 422996, Model 1923, while being driven by the assured or a member of his family who was at least sixteen years of age and of lawful age to drive an automobile under the laws of Kentucky, for which damage to persons or property the assured should be legally liable and agreed further to pay all costs and expense incident to the investigation and settlement of claims and all costs taxed against assured in any legal proceding . . . and that defendant company further agreed that if any suit, even if groundless should be brought against the assured to enforce a claim for damages on account of any accident covered by said policy, the Company would at its own cost defend or at its option settle said suit in the name and on behalf of the assured. . . . "

That he did make such investigations as were necessary and did prepare through his attorneys said suit for trial, and that said suit was tried before a jury in the Laurel Circuit Court at London, Kentucky, in October, 1927, and resulted in a judgment for the defendant and his said son. Plaintiff says that he had incurred as costs and expenses incident to the investigation and the trial for said suit the following sums:

Attorneys' fees ........................................................$2,500.00
Court costs ........................................................ 118.50

Expense in making investigation and in securing the attendance of witnesses for traveling and hotel expenses while making investigation and at trial of case in London, Kentucky .......... 284.73
_____
Total ........................................................$2,903.23

"That immediately after trial of said case he made and furnished to the defendant an itemized statement of the costs and expenses, of said case, and demanded of the defendant the payment thereof, but that the defendant failed and refused and now fails and refuses to pay same or any part thereof."

For these sums Dr. Guerrant prayed judgment. The surety company's demurrer to this petition was overruled, and it answered, denied the petition, alleged that

any sum in excess of $1,000 for attorneys' fees and $100 for expenses was unreasonable, and further alleged:

"It says that on said occasion the plaintiff, at plaintiff's office in Winchester, Clark County, Kentucky, orally stated to said Lacy that he had met with an accident with his car while driven by his son, the Edward Guerrant mentioned the petition, in Laurel County, Kentucky, in which a man had been killed; that the coroner's jury and persons who were cognizant of the facts had exonerated the plaintiff's son; that upon receiving this information which it says was all the information the plaintiff gave its agent, Lacy, with reference to said accident, and did not include the name of any witness to the accident, nor give any information other than the bare fact that in the accident a man was killed, and that his son had been exonerated by the coroner's jury and persons who were cognizant of the facts, the said Lacy instructed the plaintiff to come to his office and make out a written report of the accident; that the plaintiff said he would do so, but defendant says that the plaintiff wholly failed to go to said Lacy's office and make out a written report of the accident, and this defendant says that it had no notice of said accident until sometime in the month of July, 1927, *and the defendant says that by reason of the plaintiff's failure as soon as practicable after he ascertained the occurrence of the accident to give written notice thereof to this defendant's home office at Davenport, Iowa, or to this defendant's authorized agent the plaintiff is estopped from asserting any claim of any character against this defendant on account of said accident.*" (No part of this answer was italicized, but these are our italics used for purposes of illustration.)

Dr. Guerrant moved to strike almost the whole of this answer, but his motion was overruled except as to that part which we have italicized. As to that part it was sustained and that was stricken. The surety company's plea of estoppel was not good. To constitute a sufficient plea of estoppel, the asserter of the estoppel must in his pleading affirmatively show that his adversary in previous dealings with the asserter had induced the asserter to believe certain things to be true, that the

asserter has acted on that belief, and that his adversary is now seeking to take a position, inconsistent with such former position, by asserting as true, matter he formerly denied, by denying matter he formerly asserted to be true, or otherwise be now making contentions or claims or taking positions inconsistent with claims made or denied or positions taken in his former dealings with the asserter of the estoppel. That the asserter of the estoppel was deceived thereby is an essential element of an estoppel, though it need not appear that the party sought to be estopped intended to deceive. That the estoppel asserter was deceived by some act or conduct of the party against whom the estoppel is asserted must appear. No such suggestion is in this answer; therefore this plea of estoppel was not good. The correct way to have reached this plea would have been to have had this answer paragraphed and then to have demurred to this paragraph. A motion to strike is directed to surplusage or irrelevant matter in a pleading, or to an entire pleading if all of it be of that nature. The question of the sufficiency of the pleading to state a cause of action or a defense cannot be raised by a motion to strike. Burton v. Ott, 226 Ky. 647, 11 S. W. (2d) 700; Mann v. Woodward, 217 Ky. 491, 290 S. W. 333; Louisville, etc., Ry. Co. v. Horton, 187 Ky. 617, 219 S. W. 1084.

First Nat'l Bank v. Mannoth Blue Gem Coal Co., 194 Ky. 580, 240 S. W. 78, and Combs v. Frick Co., 162 Ky. 42, 171 S. W. 999, appear to be to the contrary. However, as this judgment is being reversed for other reasons, this is of no great importance.

Dr. Guerrant in his reply, besides denying categorically the answer, made the following affirmative allegations, a portion of which we have italicized for our convenience:

"That immediately after said accident, and as soon as he could get information concerning same, he reported all of the information obtainable by him to the defendant's agent, Lacy, as set out in his petition; *that at that time the said Lacy, acting as the duly authorized agent of the defendant, when the plaintiff so reported said accident, accepted same as in full compliance with the terms of said contract of insurance sued on* herein; and at the time instructed this plaintiff that, if the plaintiff ever heard anything

from those representing the man killed in said accident or any claim relating thereto, to let him, the said Lacy, know, and *he would notify his Company.*

"The plaintiff says that he relied upon this instruction given by the said Lacy at said time, and did report to the said Lacy from time to time as he gained any further information concerning said accident or any claim relating thereto. The plaintiff says that by so accepting the information given and so instructing this plaintiff the said Lacy, as the duly authorized agent of the defendant Company, waived for himself and for said Company any further or written notice of said accident, and that the defendant is estopped to claim the right to any other notice, under said circumstances, than such as was given as herein set forth."

Demurrer to this reply was properly overruled. The doctor specifically pleads what the defendant's agent did and that he relied upon it. This plea of estoppel against the defendant is good. Defendant moved to strike almost the whole of this reply, but its motion was properly overruled. Rejoinder completed the issues of fact which were: Were the sums paid by Dr. Guerrant for attorney's fees, etc., reasonable, and did Lacy accept or by his words or conduct induce Dr. Guerrant to believe he had accepted the oral reports made by Dr. Guerrant as full compliance with the terms of the contract sued on?

The surety company abandoned its issue as to the reasonableness of Dr. Guerrant's expenditures, and that is behind us. As to the report made by Dr. Guerrant to Mr. Lacy and Lacy's actual or apparent acceptance thereof, the evidence of the doctor abundantly maintained the issue.

Mr. Lacy's testimony is almost the same as that of the doctor, and he certainly does admit the doctor reported this accident with meticulous elaboration, as to where, when, how and why it occurred, names of witnesses, etc. There is just one sharp issue in their evidence. Lacy says he told Dr. Guerrant to come to his office and make a report of the accident, and Dr. Guerrant says Lacy did not tell him that, but told him, "If you ever hear anything more about it let me know and I will take care of it." "He (Lacy) told me if I ever heard anything about this, to let him know, and I will notify the company and will take care of you on this pol-

icy.'' Lacy made no report to the company, and with the exception of some other oral reports to Lacy, which the doctor claims to have made, but which Lacy denied, Dr. Guerrant did nothing more until he was threatened with suit in July, 1927, when Lacy admits the doctor again spoke to him about the matter and he then gave the doctor one of the company's printed forms for use in reporting accidents, which form was promptly filled out and on July 14th returned to Lacy.

At the conclusion of all the evidence, the surety company moved for a peremptory instruction, its motion was overruled, and that is one of the grounds on which it relies for reversal. This is bottomed on the alleged failure of the evidence to show a compliance with this provision of the policy.

> "As soon as practicable after the Assured ascertains the occurrence of an accident involving bodily injuries and/or death or damage to property, the Assured shall give written notice thereof to the Company's Home Office at Davenport, Iowa or to the Company's authorized agent. This notice should contain the fullest information obtainable at the time.''

It is admitted no one made a report of any kind to the company's home office at Davenport, Iowa, and that Dr. Guerrant made a written report to no one. We must note here that in this case the agent says he received an oral report but directed Dr. Guerrant to come to his office and make a report.

The surety company insists that what the doctor did was not sufficient to enable him to recover in addition to the provision for written notice copied above, it relies on these provisions of the policy:

> "No erasure or change appearing on the face of this policy or Supplement attached as originally, printed, and no change or waiver of any of its terms, conditions or statements shall be valid unless endorsed hereon and signed by the President, a Vice President, Secretary or Assistant Secretary of the Company. Notice to or knowledge by any agent or any other person shall not be held to waive any of the terms, conditions or statements herein.''

The surety company now contends that by these provisions it imposed limitations upon the powers of its

agents and that these imposed limitations were a part of the contract it made with Dr. Guerrant, of which he must take notice.

The surety company cites the case of Connecticut Fire Ins. Co. v. Roberts, 226 Ky. 534, 11 S. W. (2d) 148, 153, wherein we said:

"Where limitations on the agent's authority are contained in the application or policy, insured is bound to take notice thereof, and cannot hold the company bound for acts of the agent beyond such limitations."

That is true and it is so held in other cases. See Com. L. Ins. Co. v. Vanhoose, 208 Ky. 741, 271 S. W. 1062; Metropolitan L. Ins. Co. v. Davis, 219 Ky. 335, 292 S. W. 774; Lee v. Hartford Fire Ins. Co., 223 Ky. 533. 4 S. W. (2d) 372; Continental Ins. Co. v. Simpson, 220 Ky. 167, 294 S. W. 1048.

The only case the surety company cites that approaches support for its position is that of Traveler's Ins. Co. v. Myers, 62 Ohio St. 529, 57 N. E. 458, 49 L. R. A. 760, and that case is not applicable here because the agent in that case was a mere soliciting agent, as the Ohio court was careful to point out over and over again in the course of the opinion. That is not the status of Mr. Lacy, for the policy states he is an "authorized agent."

We have pointed out in Staples v. Continental Ins. Co., 223 Ky. 842, 5 S. W. (2d) 265, the difference between soliciting agents and those whose authority was general in its nature. The case of Connecticut Fire Ins. Co. v. Roberts, 226 Ky. 534, 11 S. W. (2d) 148, cited as though it were some new made law, was but an application of the Staples case to the facts in the Roberts case. It contained nothing new. Law is not made in judicial opinions, it is discovered, what is seemingly new is in reality old, and results from the application of old principles to new conditions.

We must not overlook the difference between the issues and questions in the case of Traveler's Ins. Co. v. Myers, 62 Ohio St. 529, 57 N. E. 458, 49 L. R. A. 760, and the issues and questions here. In the Myers case the opinion is rested upon the limitations upon the powers of the agent to whom the oral notice was given, while in this case the surety company has bottomed its defense

upon alleged defects in the notice that was given to its "authorized agent."

The surety company in support of its contention has cited a number of other cases wherein no recoveries were allowed because the insured had delayed the giving of any sort of notice. We shall list them and give the length of the delay in each case. Jefferson R. Co. v. Employers' L. I. Co., 149 Ky. 741, 149 S. W. 1011, (11 months); McCarthy v. Rendle, 230 Mass. 35, 119 N. E. 188, L. R. A. 1918E. 111 (23 days); Deer Trail C. M. Co. v. Md. Cas. Co., 36 Wash. 46, 78 P. 135, 67 L. R. A. 275 (8 months); Lewis v. C. C. I Co., 142 Md. 472, 121 A. 259, 28 A. L. R. 1287 (about 50 days); Underwood V. Co. v. L. G. & A. Co., 100 Wis. 378, 75 N. W. 996 (9 months).

We have read these cases carefully, and none of them throws any light on the question presented in this case. This case does not present a question of "no notice" or of "delayed notice," but solely the question of the sufficiency of a notice, which was given to the proper party, was timely and full, but was not in writing.

There are in the books a number of cases wherein casualty insurance companies have been required to pay loses where oral notices only had been given, for example: Andrus v. Maryland Casualty Co., 91 Minn. 358, 98 N. W. 200; Farmers' H. W. Co. v. Casualty Co. of America, 184 Iowa, 773, 167 N. W. 204, 169 N. W. 178; Reilly v. Linden et al., 151 Minn. 1, 186 N. W. 121; LeBlanc v. Standard Ins. Co., 114 Me. 6, 95 A. 284; Vandervliet v. Standard A. I. Co., 209 Mich. 146, 176 N. W. 574; McKenna v. International I. Co., 125 Wash. 28, 215 P. 66; Continental Cas. Co. v. Linn, 226 Ky. 328, 10 S. W. (2d) 1079.

The surety company insists its motion for a peremptory instruction should have been sustained because of the provisions of its policy which we have quoted, by which it denied to its agents power to waive any provisions in this policy.

In Connecticut Ins. Co. v. Omar Roberts, 226 Ky. 534, 11 S. W. (2d) 148, 154 we said:

> "Conditions affecting the risk itself are more strictly enforced than those relating to the mode of establishing the loss."

That is the general rule in relation to insurance contracts. The United States Circuit Court of Appeals for the Tenth Circuit recently had a similar question before it in case of Concordia Ins. Co. v. School Dist., 40 F. (2d) 379, and it affirmed a judgment in which the insurer was held liable; an appeal was taken to the United States Supreme Court, and on February 24, 1931, that court affirmed the judgment. See 51 S. Ct. 275, 276, 75 L. Ed. . . .''

In that opinion the Supreme Court said:

.''Unless the stipulation contained in the policy that any waiver to be effective must be written upon or attached to the policy stands in the way, it is clear that the facts alleged are sufficient to constitute a waiver of, or, what amounts to the same thing, an estoppel against setting up, the condition requiring verified proofs of loss to be furnished within sixty days. . . . That the stipulation does not stand in the way is settled by the great preponderance of federal and state decisions. The rule deducible from these authorities is that such a stipulation has reference to those provisions and conditions which constitute part of the contract of insurance, and does not apply to a waiver, after the loss occurs, of stipulations in respect of things to be done subsequent to the loss as prerequisites to adjustment and payment.''

We regard that as of controlling applicability here.

That brings us to the next question, which is that the court erred in the instructions which it did give. We find the insurance company is correct in its contention as to one of these instructions, and we have inserted in that instruction in italics matter which we regard as necesssary to be included in it, in order to submit to the jury the issue as made.

The court gave to the jury instructions A, B, C, D, and E. Instruction E told the jury nine or more of them could return a verdict by all signing it. Instruction D dealt with the measure of the recovery. Instruction C told the jury the written notice given July 14, 1927, was not given in a reasonable time and was relied on by neither party.

Instructions A and B with the insertion stated, were as follows:

A. "If the jury believe from the evidence that the plaintiff, within a reasonable time after the accident, notified John H. Lacy, Agent, of the defendant Company, that his motor car, while driven by his son, had met with an accident in which a man had been killed; that his son had been exonerated by officers knowing the facts, and gave him (Lacy) the names of witnesses and later the names of other witnesses as they were discovered, or gave him the fullest information obtainable at the time, *and Lacy then by either his words or conduct induced Dr. Guerrant, to believe a written notice would not be required*, the jury will find for the plaintiff, and unless they so believe, or if they believe as set out in instruction B. they will find for the defendant."

B. "If the jury believe from the evidence that at the time plaintiff gave Lacy the information and notice set out in the first instruction, Lacy directed the plaintiff to come to his (Lacy's) office and make out a written report of the accident, and further believe that plaintiff failed, within a reasonable time, to make such written report, they will find for the defendant."

For failure to instruct as indicated, the judgment is reversed, and the defendant is awarded a new trial.

The whole court sitting.